**In re David A. LANG.**

No. 63120.

Supreme Court of Missouri,
En Banc.

Nov. 9, 1982.

Walter O. Theiss, St. Louis, for petitioner.

Charles R. Oldham, St. Louis, for respondent.

FINCH, Senior Judge.

This is a disciplinary proceeding instituted against David A. Lang, respondent, by the Bar Committee of the Twenty-Second Judicial Circuit of Missouri pursuant to Rule 5.[1] After the required investigation and a formal hearing by said Bar Committee, it filed in this court on June 1, 1981 its information charging respondent with six acts of professional misconduct in violation of various Disciplinary Rules[2] of the Code of Professional Responsibility, Rule 4.

---

1. References are to Missouri Supreme Court Rules, VAMR.

2. DR 1–102(A)(1) and (4), DR 6–101(A)(3), and DR 7–101(A)(1), (2) and (3).

The information contains six counts, each of which charges that respondent accepted employment and received a fee for services to be performed but that he failed to perform those services and did not return the fee which he received. The six counts were as follows:

Count I charged that respondent was paid $350.00 in 1977 by Evelyn Meachum to obtain dissolution of her marriage. A dissolution suit was not filed by respondent.

Count II charged that in 1978 respondent was paid $500.00 as fees and costs for filing a writ of habeas corpus on behalf of Frederick C. White, an inmate of the Missouri State Penitentiary. Such a proceeding was not instituted by respondent.

Count III involved employment by John Earl Lane in 1977 to represent him in the dissolution of his marriage. A retainer fee of $40.00 was paid but respondent did not file the dissolution action.

Count IV charged that respondent was employed in 1978 by Victoria Hughley to file a bankruptcy petition on her behalf for which a fee of $400.00 was paid. Respondent did not file the petition in bankruptcy. Subsequently, Victoria Hughley was adjudicated bankrupt but respondent did not repay the $400.00 to Victoria Hughley nor the bankrupt estate, as ordered by the bankruptcy court, and did not explain to the bankruptcy court his failure to do so.

Count V alleged that in 1976 respondent was paid $175.00 to handle a racial discrimination suit on behalf of Robert Edwards against a former employer. A suit was filed but later it was dismissed without prejudice. No other action was taken by respondent before the statute of limitations had run.

Count VI alleged that in 1976 William Calhoun employed respondent to file suit for racial discrimination against a former employer. A fee of $250.00 was paid. Thereafter, respondent filed suit but it was dismissed without prejudice. Respondent took no further action before the statute of limitations had run.

Respondent filed an answer in which he admitted all allegations of the information except that he denied that his conduct violated the disciplinary rules of this court. The basis of that contention was that at the times in question he had a mental illness which made it impossible for him to carry out his duties as an attorney. He further alleged he had recovered from that mental illness and was then performing in a satisfactory manner his duties as a member of the teaching staff of Howard University Law School.

This Court appointed Honorable James D. Clemens as Special Master herein. He conducted an evidentiary hearing after which he made findings of fact and conclusions of law which recited that by his admitted conduct respondent had violated the disciplinary rules charged and that said conduct was not excusable on the basis of his mental condition. The Special Master recommended that respondent be publicly reprimanded, that he be suspended from the practice of law until further order of this Court, that respondent be required to repay with interest the fees paid by clients not already reimbursed by him, and that respondent be granted leave to apply for reinstatement after three years.

Clearly, the acts complained of and proved, all of which respondent admits, violated the disciplinary rules listed in the information. That leaves for determination only whether respondent was suffering from mental illness at the time of the acts complained of, and, if he was, whether such illness constitutes a complete defense or whether it is only a factor to be considered in mitigation in determining what discipline is to be imposed.

We conclude that the evidence shows that respondent was suffering from a mental illness during the period in which he did the things complained of in the information. He was not psychotic but he did exhibit symptoms of major depressive reaction which would diminish his capacity to make decisions. However, the evidence discloses that during that same period, respondent was handling some cases satisfactorily.

These were cases which appealed to respondent and which he enjoyed handling. In addition, during part of the period in question, he began teaching in the St. Louis University Law School and he performed those duties satisfactorily. Respondent himself testified that during the time in question he knew that he was responsible for various lawsuits, that work needed to be done thereon, and that he was not performing the needed work. He also conceded that during the time in question he did work on matters in which he was interested and he taught law school classes, work he also found to be interesting.

■ As this court has said on various occasions, the paramount objective of the Court in cases such as this is to protect society and maintain the integrity of the profession. *In re Randolph,* 347 S.W.2d 91 (Mo. banc 1961); *In re Sullivan,* 494 S.W.2d 329 (Mo. banc 1973); *In re Hautchens,* 555 S.W.2d 24 (Mo. banc 1977). The disciplinary rules established in Rule 4 were promulgated to achieve those goals.

■ To hold that mental illness constitutes a complete defense to charges of professional misconduct and to impose no discipline or sanctions where mental illness exists would result in failure to provide the intended protection of the public. Consequently, we hold that mental illness is not a complete defense to charges of violation of the disciplinary rules specified in Rule 4. However, mental illness can and should be considered as a mitigating factor in determining what discipline to impose, provided, of course, that the primary objective of protecting the public must be achieved. Therefore, respondent should be disciplined for his professional misconduct.

This rule which we now articulate is consistent with what the Court did in *Houtchens, supra.* In that case the Court said that disbarment would have been the proper response to respondent's professional misconduct, absent some persuasive and acceptable

mitigating factor. Respondent's mental and physical problems, from which he might recover, provided a mitigating factor which the Court accepted. A similar rule was applied in the case of *In the Matter of Kramer,* 73 A.D.2d 983, 423 N.Y.S.2d 322 (1980), wherein the attorney was shown to have had episodes of a manic disease which severely impaired his judgment. In rejecting the asserted defense of mental disease and suspending the attorney for two years, the Court said, l. c. 323:

> "Respondent urges that the charges should be dismissed since the alleged misconduct occurred at a time when he was suffering from a severe mental disorder. * * * As the hearing judge recognized, mental disability or disorder is no defense to a disciplinary action for professional misconduct, although it may be considered as a mitigating factor in arriving at the measure of discipline to be imposed for such misconduct."

*See also In the Matter of Hoffman,* 41 A.D.2d 998, 343 N.Y.S.2d 994 (1973).

■ The Bar Committee, informant herein, urges that the conduct of respondent warrants disbarment. We conclude otherwise when we consider all the circumstances, including the showing of mental illness which produced a major depressive reaction. Instead, we conclude that suspension is appropriate. This is consistent with what this Court has done in *Houtchens* and with what appears to be the practice in many other states. Annot. A.L.R.2d 739 (1964).

Respondent is suspended indefinitely, with leave to apply for reinstatement after expiration of a period of two years from the date of rendition of this opinion upon a showing of good moral character, freedom from any mental illness, and proof that within twelve months from the date of this opinion he has reimbursed with interest all fees paid to him by the clients listed in Counts I through VI which have not already been repaid.[3] It also is ordered that

---

3. While respondent had not repaid any of the clients prior to filing of the proceeding herein, the Special Master found that at the time of the

hearing he had repaid Evelyn Meachum $350.00 plus $140.00 interest, John Earl Lane

the costs in this proceeding be assessed against respondent.

DONNELLY, C.J., and RENDLEN, SEILER, WELLIVER, HIGGINS and GUNN, JJ., concur.

BILLINGS, J., not sitting.

$40.00 and $13.00 interest and William F. Cal-          houn $250.00 and $80.00 interest.