ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Respondent,

v.

Wayne R. STARR, Jr. and Elwyn L. Cady, Jr., et al., and James L. Gillham, Administrator Ad Litem, Estate of E.A. Gould, Deceased, Appellants.

No. WD 33690.

Missouri Court of Appeals, Western District.

March 15, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 3, 1983.

Elwyn L. Cady, Jr., pro se.

James L. Gillham, pro se.

Karl F. Schmidt, Leonard J. Johnson, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for respondent.

Before TURNAGE, P.J., and CLARK and KENNEDY, JJ.

TURNAGE, Presiding Judge.

St. Paul Fire and Marine Insurance Company filed a declaratory action against, among others, Wayne R. Starr, Elwyn F. Cady, and James F. Gillham seeking to determine its liability on a series of professional liability insurance policies which it had issued to Starr. The trial court determined that St. Paul had no duty under these policies to defend Starr or to satisfy any judgments rendered against him in connection with his performance as attorney, executor, and trustee for the estate and trust of E.A. Gould.

This ruling has been separately appealed by Gillham, the administrator ad litem of the Gould estate, and Cady, a trustee of a trust created by the will of Gould. Gillham contends that the court erred in finding that a judgment against Starr was based solely on his deceitful practices, that the rule of collateral estoppel should not have been applied in this case, and that the court erred in holding that aspects of Starr's conduct constituted deceit rather than constructive deceit. Cady contends that the court erred in refusing to admit statements made by various St. Paul agents, and in

granting a partial summary judgment. Affirmed.

The underlying facts of this case involve three prior proceedings which arose out of Starr's performance as attorney, executor, and trustee for the Gould estate and trust. In the first of these cases, which this court affirmed on appeal, Starr was removed as executor of the Gould estate and ordered to make restitution to the estate in the amount of $126,491. *In the Matter of the Estate of Gould,* 547 S.W.2d 863 (Mo.App. 1977), Gillham was one of the parties to that action.

In the second case, which was also upheld on appeal by this court, Starr, Cady, and a third trustee were removed and ordered to pay restitution totalling $77,911. In addition, Starr individually was ordered to pay $50,000 in punitive damages. *Gould v. Starr,* 558 S.W.2d 755 (Mo.App.1977).

Finally, in the case of *In re Starr,* 538 S.W.2d 334 (Mo. banc 1976), Starr's license to practice law was revoked on the grounds that he had acted in violation of DR 1–102(A)(4) and EC 8–5.[1] The basis for Starr's disbarment was his performance in connection with the Gould estate and trust.

Starr's policies with St. Paul provided coverage as follows:

> Coverage A—Professional Liability. To pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable (the performance of professional services shall be deemed to include the Insured's acts as an administrator, conservator, executor, guardian, trustee, or in any similar fiduciary capacity, but only to the extent for which the usual attorney-client relationship the In-

sured would be legally responsible as attorney for a fiduciary).

\* \* \* \* \* \*

COVERAGE A DOES NOT APPLY:

(1) To any dishonest, fraudulent, criminal or malicious act or omission of any Insured, or any partner, employee, officer, stockholder, or member of any Insured;

On the basis of this language, St. Paul filed a motion for summary judgment on all counts. The trial court granted partial summary judgment on the count relating to Starr's right to indemnification for punitive damages.

After a hearing on the remaining counts, the trial court held that Starr was excluded from coverage under the terms of the policies. The court justified this result as follows:

> Starr is not entitled to any defense or idemnification for all or any part of any judgment against Starr arising out of any of his acts or omissions as executor and attorney for the Gould estate or as trustee of the Gould trust ... because Starr's conduct was dishonest, fraudulent, criminal, and malicious.

The court further held that the parties were conclusively bound by the judgments rendered in the prior litigation, and thus were collaterally estopped from relitigating or denying issues relating to the nature and character of Starr's conduct.

With respect to Cady, the court held that St. Paul had no duty to pay judgments rendered against him for two reasons. First, he was not insured under the terms of Starr's policies. Second, even if he was insured under the policies, the exclusionary clause would preclude coverage for his acts and omissions.

■ Gillham first contends that the trial court erred in finding that the $126,491 judgment against Starr was based solely on Starr's deceitful practices. Gillham argues

---

1. DR 1–102(A)(4), in pertinent part, provides that:

   A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

   EC 8–5, in pertinent part, provides that:

Fraudulent, deceptive, or otherwise illegal conduct by a participant in a proceeding before a tribunal ... is inconsistent with fair administration of justice, and it should never be participated in or condoned by lawyers.

that the trial judge's decision was based on two independent grounds; Starr's deceitful practices, and his negligence and incompetence. Because negligent and incompetent acts are within the policies' coverage, Gillham concludes that the trial court's result was incorrect.

A review of the opinion in *In the Matter of the Estate of Gould, supra,* fails to reveal any mention of negligence or incompetence. In that case, this court stated "[a]ccordingly, because Mr. Starr's conduct as executor was improper and his conduct as attorney wrong, he was properly removed and denied all compensation. The will did give Mr. Starr considerable discretion and authority with respect to his administration and fees. It did not, however, give him authority to practice deceit or profit from wrongdoing." 547 S.W.2d at 869[2, 3]. There can be no doubt that the trial court and this court acted on the basis of Starr's wrongdoing, and not on any ground of negligence or incompetence. Thus, the trial court's finding that the judgment against Starr arose out of dishonest and fraudulent acts falling within the exclusion to the policy was supported by substantial evidence, and must be affirmed.

■ Gillham's second argument is that the trial court erred in applying the doctrine of collateral estoppel. In the trial court's conclusions of law, the judge stated:

> The dishonest, fraudulent, criminal and malicious nature and character of Starr's acts have been judicially determined in the prior litigation involving Starr, and defendants are conclusively bound by the results of the prior litigation because they were parties to one or more of the cases or in privity with one or more of the parties thereto.

Gillham's argument on this point relies on his contention that the judgment against Starr was based on negligence as well as deceit. Gillham argues that the case of *In the Matter of the Estate of Gould* did not decide if Starr was negligent or incompetent. It is Gillham's position that because that case did not relate to Starr's service as an attorney for the estate, the specific issue

of his negligence in that regard has not been previously addressed.

There can be no doubt that *In the Matter of the Estate of Gould* decided that Starr's acts were wrongful and deceitful. That being the case, there is no room to argue that the issues of negligence and incompetence were not adjudicated. The same acts could not be wrongful and at the same time be mere negligence as the result of professional incompetence. *In the Matter of the Estate of Gould* established the wrongfullness of Starr's actions and this holding means that the question of Starr's negligence and incompetence was excluded. Because that is the very issue at the heart of this case, because the prior actions each resulted in a final judgment on the merits, and because Gillham was a party to two of these three actions, the application of the collateral estoppel doctrine was appropriate in this case. *In re Estate of Laspy,* 409 S.W.2d 725, 737[12] (Mo.App.1966).

Gillham's final contention is that the trial court erred in holding that aspects of Starr's conduct constituted deceit rather than constructive deceit, which is not within the policies' exclusions. This court need not determine whether or not Gillham is correct in his claim that constructive deceit is not covered by the policy exclusions, since there is sufficient evidence that Starr's actions were the result of the intentional deception characteristic of actual deceit.

■ On his appeal, Cady contends that the trial court erred in refusing to admit statements made by various St. Paul agents, which he claims indicated that he was covered by the policies in question. In a court tried case such as this one, the appellate court may consider such of the evidence as it deems admissible, even if the trial court ruled to the contrary. *Ruckman & Hansen v. State Highway Commission,* 546 S.W.2d 500, 502 (Mo.App.1976). Without deciding whether or not the evidence which Cady refers to was admissible, this court will assume for the sake of argument that it was. This evidence would not, however, have affected the outcome which the trial court reached in this case. No matter

how vehemently St. Paul's agents might have stated that Cady was covered by the policies, such statements could not overcome the language of the policies themselves, which named only Starr as the insured. This situation is governed by the general rule that an insurer's agent cannot bind an insurer by a construction of a policy which is contrary to the plain meaning of language used in the policy and would vary its terms. *Ray v. Mutual Benefit Health & Accident Ass'n.*, 220 S.W.2d 622, 626[8] (Mo. App.1949).

■ Cady further objects to the trial court's granting of partial summary judgment on count III of St. Paul's first amended petition. Since Cady is not covered by the policies, he has no standing to complain about such judgment.

The judgment is affirmed.

All concur.